Good morning, everyone. Once again, we're delighted to be sitting here in Seattle. The cases will be called in the order listed on the docket. The first case, Lu v. Yang, has been submitted on the briefs. The first case on calendar for argument is Peridot Tree WA and Peridot Tree, Inc. v. Washington State Liquor and Cannabis Control Board in City of Sacramento. These cases have been consolidated for argument. Which counsel will be arguing first? Good morning, Your Honor. Jeffrey Jensen on behalf of both Peridot opponents. And I'd like to reserve seven minutes for rebuttal, please. All right. Thank you, counsel. Please proceed. Thank you, Your Honors. I had the privilege many years ago of clerking for this court, so I know the court has already read the briefs and you don't want me to just rehash what's already been done. So I will just limit myself to at a very high level pointing out that the Dormant Commerce Clause applies unless the federal government makes an unmistakably clear statement that exempts the market. They haven't done so here. They did make cannabis illegal under the Controlled Substances Act, but the Commerce Clause and the Dormant Commerce Clause are two different powers. And the federal government exercising its affirmative power to make a substance illegal is separate from the prohibition on the states under the Dormant Commerce Clause to interfere with interstate commerce. Counsel, why couldn't we interpret that as a clear statement of the government's view on this issue? Because they're different powers, Your Honor. The federal government acting under the power of the Commerce Clause is different from the reservation of the states acting under the Dormant Commerce Clause. And whether the federal government makes cannabis illegal nationwide is separately from the prohibition that is intended to prevent trade wars between the states. So the difficulty I have with that argument is that if the government has declared a substance to be illegal, then we're supposed to say that that same government wants us to facilitate interstate marketing of that same substance. That seems to be paradoxical. Your Honor, we're not asking the court to facilitate the interstate commerce. We're asking for an injunction that would prevent the licenses. To the extent you're talking about making a distinction, I would point to the law… So you're asking for an injunction to prevent the licenses? What do you mean? We're asking for an injunction against the state issuing the licenses under their own constitutional application program. But doesn't your client want the license? My client wants to participate in a constitutional licensing program. We're not asking the court to award licenses. I don't frankly think the court can award licenses. No, but that's your end goal. Your end goal is for your client to be able to participate in the award of cannabis licenses even though not a resident of the states. Well, the end goal is to participate in a constitutional application program. Whether they receive an award of a license or not will be dependent on the program. I somewhat got off track as to what the question was, but I believe it was about the… The government making a substance illegal and then… So I would point to the lottery tickets case that is covered in the briefs. So in that case, the federal government said selling in-state lottery tickets is legal. Selling out-of-state lottery tickets is illegal. The state law mirrored that and it said selling state Pennsylvania lottery tickets is legal. Selling lottery tickets from other states is illegal. And that was upheld by, maybe it was the Fifth Circuit, I forgot which circuit, because that perfectly tracked with the federal law. Here it doesn't. The application programs that we're challenging, both in Sacramento and in Washington, permit cannabis sales. The only thing this does is reserve the profits for the local voters. And that does not support the Congress's position of making cannabis illegal. I guess whatever we would infer in terms of whether Congress has – approves this or they disapprove this, I mean there seems to be a kind of step zero question as to whether the Dormant Commerce Clause should be understood to give someone essentially an implied right to engage in interstate commerce that is nonetheless illegal. Well, I disagree with you, Honor. The Dormant Commerce Clause is a structural right, not an individual right, meaning it's a right that belongs to the states and to the governments. We cited a case in the – I believe it was the Sacramento reply brief that goes to that, that you have a right to challenge a Dormant Commerce Clause issue irrespective of an individual right to participate in the market. That's true, but I mean I guess it's still just kind of – this is just another way of restating the question, which is if the point of the Dormant Commerce Clause is to facilitate interstate commerce, why would we want – why would we interpret the Constitution to facilitate interstate commerce of something that's presently illegal under federal law? Your Honor, that is one purpose of the Dormant Commerce Clause, but the primary and original purpose is to prevent balkanization of the states and trade wars, and we've cited, and I believe both opening briefs, language in cases to that effect. In fact, we've also shown that the states are – they've created these interstate compacts that have not gone into effect at this time. They would be contingent on – Didn't Congress order balkanization in this marijuana market? I mean that because they are not allowed to be transferred across state lines, it is – Congress has decided that they should have – they should be balkanized. No, the prohibition on transferring between state lines is in the Controlled Substance Act. That is implied from the – Correct. The Cole Memo. No, the Cole Memo is irrelevant. It's gone. The Controlled Substance Act bans the transfer of marijuana across state lines, correct? The Controlled Substance Act bans all marijuana, whether interstate or out-of-state. Yes, exactly. So Congress has decided that the market for marijuana is balkanized, and how can we, as a court, say no, Congress, you can't do that? Well, I'm afraid I don't understand your meaning that it's balkanized. If it's illegal within a state, why would it be balkanized if it's just flat-blanket illegal? Because it can't be transferred across states. It's illegal within the state under state law, but under federal law it can't be transferred across state lines. So therefore, whatever market exists, state market exists, it is balkanized by its nature. But it's illegal under federal law as well in state. That's not a state balkanization. I mean that's not a federal balkanization. The whole point is then how is this a dormant commerce clause question when you said the primary purpose is to prevent balkanization, but federal law already requires it to be balkanized. I disagree with that premise. The federal law says it's illegal nationwide. It doesn't say that the states can do it. Federal law does not permit balkanization. How can states transfer marijuana across state lines? What allows them to transfer marijuana across state lines? Nothing. There's nothing that allows them to have it in state either. Well, but the federal government has not prosecuted at least for medical marijuana in the states, but the states have not transported across state lines. Is that correct? That's true, but most states, well I shouldn't say most, many of the states I'm familiar with do not have a residency requirement for ownership in a business. But that's a different point. The point is, you know, following up what Judge Bumate said, it's already separated by states. Each state has its own laws about marijuana, and those laws are totally intrastate, and so that's kind of a balkanization, wouldn't you agree? Well, we're now talking about products, not the licenses, and this isn't about products. But the licenses are for the products. The licenses are to sell products, right. But the licenses do not allow the products to cross state lines. And we were talking about balkanization and the fact that the federal government has not prosecuted recreational or medical within the last several years. True, but many states allow... But that could change. That could change, but the court was just pointing out they haven't, and they haven't done that for states that allow out-of-state ownership of licenses either. So there isn't balkanization as far as the ownership of licenses. I mean, you're right. There's some amount of interstate commerce in marijuana that Congress has legislated saying, you know, you really shouldn't do this, but the enforcement is not there, and so it exists. The Supreme Court said that in Raich. I guess the question remains, though, you know, we're having a debate in the United States about how much marijuana should be used and by whom and when, and should that not be left to Congress and the states to figure that out as opposed to a court saying, well, we're going to take this implied right under the Constitution and extend it to goods that are illegal under federal law? Well, again, there is a distinction between the product and the licenses, and if they believe there is a reason to keep the product within state, then that is an analysis under the Dormant Commerce Clause. Well, but the license, I mean, you're asking for, you want to have a regime where anybody can apply for the license, and so that would, it doesn't necessarily mean marijuana would be transported across state lines, but it does mean that somebody out of state would have the ability to get a Washington or Sacramento cannabis license, and that is a form of interstate commerce. Correct, absolutely correct. So why would we have a court essentially enable that in the face of a contrary congressional determination? Why not let Congress make that call? So I think we're sort of, you know, on the border of whether we're talking about does the Dormant Commerce Clause applies versus whether there is a valid reason, and, you know, I've always taken the position that whether the Dormant Commerce Clause, whether these prohibitions can pass the Dormant Commerce Clause test. I think there is one analysis for licenses versus one analysis versus product, but the separate and the primary issue is does the Dormant Commerce Clause apply, and that Congress has not made an unmistakably clear statement exempting the marijuana market, which Congress knows exists, from the Dormant Commerce Clause. Well, yeah, I mean, I guess if you get into a question of congressional intent, that's one thing, but there is, again, I think a threshold question just as a matter of constitutional law as to whether the Dormant Commerce Clause, which essentially a judge-made doctrine should extend to goods that are illegal under federal law. That would seem just a constitutional law question, not a congressional intent question. So the First Circuit addressed that, and they pointed out that the default rule is that the Dormant Commerce Clause applies to all markets unless there is an unmistakably clear message to the contrary. This would require a reversal of that presumption in the case where markets are illegal, and you have to presume that Congress did not want the Dormant Commerce Clause to apply unless they make a statement to the opposite, and there's nothing in the law and precedents that indicates that. So what would you do about heroin, right, if a locality legalizes heroin and allows heroin licenses? Could we then be here on a Dormant Commerce Clause heroin case, too? That's addressed in the briefs, Your Honor, and I'm not sure if you're raising the point that they made in the briefs on heroin, but the point they made in the briefs is that if heroin is legal in Oregon, that Washington would have to allow it to be brought in. That's absolutely false. There's nothing in the law or in the Dormant Commerce Clause that says Washington has to allow heroin to come into its market. No, no, but I mean we're talking about licenses, right? So the idea would be if your clients wanted to have a heroin license, a license to distribute heroin in Oregon, we'd have the same kind of question there. Whether the federal government wants to prohibit heroin or whether the states want to prohibit heroin, they can absolutely do that. But if a state is going to grant licenses, they have to do it in compliance with the Constitution. The state is just talking out of both sides of its mouth here. They want this treated as legal when it comes to licensing and taxes and to benefit from it, but then they want to treat it as illegal so they can benefit even more and reserve the benefits for their voters. It is illegal under federal law. That's not a ruse to say it's illegal under federal law because it is. The federal government has every right to stop cannabis if they wish. They haven't, but they can. The state has every right to say we are not going to use our police to enforce and to permit this. What they can't do is they can't grant affirmative licenses and reserve those for their own voters. Well, maybe they can and maybe they can't. It depends on what we decide. Correct. But the Interstate Commerce Clause has to require interstate commerce, right? So if Washington only has marijuana within the states and they're not allowed to go outside the states, how is that interstate commerce? Because you have – there are two different things, right? Commerce is more than just the sale of the physical item. It's the ownership in the entity as well. Sure. And then, you know, it's somewhat of assuming the answer. You're saying if they can only stay inside of the state, then why is that a Dormant Commerce Clause? But if the Dormant Commerce Clause prevents it, then it's a violation. I've hit my seven minutes remaining for rebuttal. All right. Thank you, Counsel. Good morning, Your Honors. Congress may please the Court. Tara Hines on behalf of Washington State. When Congress passed the Controlled Substances Act using its affirmative Commerce Clause authority, it chose to outlaw any market in cannabis as a matter of federal law. Extending Dormant Commerce Clause protections to an interstate market that Congress has declared illegal would conflict with the purpose of the clause and undermine congressional authority. The Dormant Commerce Clause does not exist in a vacuum. It's one side of a double-edged sword intended to preserve Congress's ultimate authority over interstate commerce. And here, Congress has spoken. Until Congress or the Attorney General using powers delegated by Congress decides to legalize cannabis, the Dormant Commerce Clause simply does not apply to the cannabis market. I think your friend on the other side makes a fair point that it's a little ironic for you and your clients to be sort of using the illegality of federal law as the basis for the argument when your states, your localities allow marijuana dispensaries, which are ostensibly illegal under federal law. How do you deal with that? Understood, Your Honor. Washington State has decided to use its police powers not to criminalize the sale of cannabis when it is purely intrastate. But it has many laws on the books that fully support the Controlled Substances Act, that are fully consistent with that, and that are consistent with federal enforcement priorities with respect to this issue. So, for example, Washington State has numerous laws that prevent the transport or sale of Washington-regulated cannabis out of state to states like Idaho, where possession of cannabis remains a felony. You have that, but everything you're doing with respect to marijuana would seem to be illegal under federal law. It's just that the federal government is not enforcing that. Your Honor, we don't deny that it remains illegal under federal law and that Washington's regulated market is subject to federal prosecution if the federal government decides to prosecute at that time. But there are many laws on the books that are consistent with the Controlled Substances Act, in which Washington is not engaged in interstate commerce, where it fully supports federal enforcement priorities of preventing interstate commerce in cannabis, that it prevents diversion of cannabis into markets where it's illegal, that it prevents the, you know, cartels from getting a foothold in the regulated market. And all of those laws would be jeopardized by applying the Dormant Commerce Clause to the cannabis market. I think your friend on the other side would say, yeah, they're subject to a Dormant Commerce Clause analysis, and many of them might well survive strict scrutiny, but some maybe wouldn't, like a licensing regime. Your Honor, I mean, I have a number of responses. One, there's no limiting principle that's being offered by Paradox Tree, and it's hard to think of what a limiting principle could be. The laws that Washington State has that prohibit interstate commerce are, by definition, facially discriminatory against interstate commerce. And so for those to survive strict scrutiny, to survive like a virtually per se rule of invalidity, you would have to say that controlling or preventing interstate commerce is a legitimate purpose of the state. But if that's true, then what is the purpose of applying the Dormant Commerce Clause in the first instance? If that is a legitimate purpose of the state that could survive strict scrutiny, then it makes absolutely no sense to apply Dormant Commerce Clause protections to this market. I mean, I think what your friend on the other side would say is there may be a compelling state interest, narrowly tailored rationale for prohibiting the interstate transfer of marijuana, but that may not be true with respect to these licenses, which are really just benefiting in-state residents. I think it still doesn't deal with the fundamental incongruity that if the state can have a legitimate purpose of preventing interstate commerce in the first instance, then why apply the Dormant Commerce Clause in the first instance when that whole purpose is to protect an interstate market? How can you both want to protect the interstate market and have a state legitimate purpose that is to prevent interstate competition? There's a fundamental incongruity here, and there's an incongruity on where the power lies, because under Peridot Tree's interpretation of the Dormant Commerce Clause, that power resides with the state. So the state can make a determination, like you had indicated earlier, where Oregon could decide to legalize heroin. And simply by making that decision on its exercise of its state powers, it would constitutionalize that decision and trigger the full protections of the Dormant Commerce Clause, at least with respect to that market within Oregon. And so Oregon would then have to have an interstate market in heroin under that law. But that subverts the entire purpose of the Dormant Commerce Clause. The Dormant Commerce Clause is from a provision of the Constitution that says Congress shall have the power to regulate commerce among the several states. That power is so broad, it is one of Congress's broadest powers, and it's so paramount that it applies even when Congress's powers lie dormant. This would subvert it. This would say any time the state makes a decision using its police powers, then it can essentially override the determination of Congress under its Affirmative Commerce Clause. Counsel, what's your response to opposing counsel's argument that there has been no clear expression by Congress that this market should be limited? I would say that the Controlled Substances Act is absolutely a clear expression of Congress that this is not a valid article of interstate commerce, and that is sufficient. Congress has said you cannot distribute this product, you cannot transport it across interstate lines, and it has made an explicit statement that this is not a valid article of commerce, and that is sufficient. But again, you don't even need to get to that question, because there's a step zero question of whether the Dormant Commerce Clause protections apply in the first instance. That idea of the unmistakably clear expression is a rule under the Dormant Commerce Clause. Before you even get there, you have to ask, does it make sense to apply these constitutional preservations to this federally illegal market in the first instance? That's going to be my question, that unmistakable clear statement. Is that the right test for the Dormant Commerce Clause? It doesn't seem to fit at all with what the text of the Commerce Clause says, right? Well, I think it's a fair test once you know Dormant Commerce Clause protections apply. So for legal products, that is the test that has been articulated by the U.S. Supreme Court, but there's an earlier question, a threshold question. Is it a Supreme Court test, or is it a Ninth Circuit test? I thought it's from Northeast Patients Group. It's from South Central Timber Development, which is a U.S. Supreme Court case, but it only applies when you've already made a determination that Dormant Commerce Clause protections apply. So it is a determination of how to, or a test for determining congressional intent to determine whether there's an exemption to Dormant Commerce Clause. Our argument here isn't that there's an exemption. It's that they don't apply in the first instance. It makes no sense whatsoever when Congress has said there shall be no interstate market. To apply a congressional doctrine that is intended to preserve Congress's decision-making, intended to preserve Congress's paramount authority over interstate commerce, to constitutionalize a right of states to sort of contradict Congress's declaration. Your opposing counsel referenced the lottery case. I think it's the third circuit case. That's right. How do you distinguish that? Your Honor, that was a situation where there was full consistency between the state law and the federal law. But again, there are many consistencies between Washington law and federal law. So Washington has laws that prevent the sale of out-of-state cannabis into Idaho, into other states. That is fully consistent with the Controlled Substances Act. And so if you apply Dormant Commerce Clause protections, you are applying a virtually per se rule of invalidity to those laws, which makes no sense as a matter of constitutional principle. It makes no sense as a matter of practical effect. And if you look at the decision in Pick a State, they talk about how when Congress has declared a product not a valid article of interstate commerce, then Dormant Commerce Clause protections don't apply. And that's exactly what Congress has done in the Controlled Substances Act. It has said that cannabis right now as a Schedule I drug is not a valid article of interstate commerce. So it makes no sense to apply a constitutional doctrine that is intended to preserve competition within a national market that Congress itself has declared illegal. And to do this as an expression of sort of Congress's commerce power is so fundamentally incongruent. It would subvert congressional power over commerce. It would subvert the very purpose of the Dormant Commerce Clause. And it would undermine all of those laws that Washington State has that are fully consistent with both the Controlled Substances Act as well as the federal enforcement priorities. So the First Circuit, which is the only circuit to address this, went the other way. So where do you think the First Circuit got off in its analysis? Well, I think they never addressed the step zero question, Judge Brass. And so what they did is they never grappled with sort of the incongruity of applying between the sort of Dormant Commerce Clause and the Affirmative Commerce Clause as applied to a federally illegal market. What it did is say, well, you know, they addressed a number of arguments that were made by Maine, none of the arguments of which we're making here. So this isn't a question of preemption, but that doesn't settle the step zero question. It's not – there might be some concern about trade wars, although we would say that there is very little concern about that because none of the states are operating an illegal interstate cannabis market. All of the states are operating closed markets because many of the states are existing within a patchwork of different state regulations. So, for example, Washington exists next to Idaho, where Idaho is illegal. Then you have Montana. There are different laws and rules and regulations. Many states allow low-volume CBD products, but they don't allow a lot of THC. Some states only allow medical marijuana and others don't allow – and not recreational. So you have all of these patchwork of regulations. And so I forget where my full point is, but it just – the interstate market is already – or the market for cannabis is already balkanized and state by state. And so it's – there isn't really an interstate market – legal interstate market to begin with. And there is no limiting principle that would allow application of Dormant Commerce Clause principles solely to licenses but not to importation of product. So that rule, the strict scrutiny under the Dormant Commerce Clause, is one of the strictest tests that there is. It is virtually – and the Supreme Court has said this over and over again – virtually a per se rule of invalidity. The Supreme Court recognizes that you just can't – states just simply cannot discriminate between in-state and out-of-state product. And so, therefore, all of Washington state's laws that would prohibit interstate commerce, that would prohibit regulated cannabis from leaving the state, all of the laws that say you need to have a special license to transport cannabis within the state and you can only do it intrastate, all of those laws would be put in jeopardy by applying Dormant Commerce Clause protections here. And so that's where I would end, Your Honor. The Dormant Commerce Clause – unless there are any further questions – the Dormant Commerce Clause does not apply to markets that Congress has declared illegal as a matter of federal law. And this Court should affirm the District Court's dismissal of Peridot Tree's claims. Thank you, Counsel. Thank you. Rebuttal? Oh, I'm sorry. I think I'll be brief. All right. Thank you. Lee Roystacker for the City of Sacramento. My colleague has hit all the points that I want to hit. The questions from the Court have as well. So really, if there aren't any further questions or specific questions to me, I probably have one final point to make. I want to know, is there any different analysis that would apply to your client's regime as compared to Washington? We have two cases that we consolidated. Is there any difference between them? On the threshold ground or point zero question, I can't remember how it was phrased. No, I don't think so. There are differences that might apply if this Court were to conclude that the Dormant Commerce Clause did apply and whether it was narrowly tailored to serve a legitimate local interest.  What was the point that you wanted to make, Counsel? Well, I wanted to draw on something Judge Brett said earlier about this being a judge-made doctrine. It is judge-made. The Supreme Court has never applied it to an illegal product. This Court has never applied it to an illegal product. The case out of Maine is the only one. We've talked about it in the briefs about the analysis and where it went wrong. Where did it go wrong? I have to agree with my colleague. I think it just really breezed right past the issue of whether the Dormant Commerce Clause applies to a federally legal market. I mean, I would think it would probably have needed some more analysis. And, of course, that's why the dissent had a problem with it. What's the status of the – like the Second Circuit has a case on this and it's pending and maybe another circuit? The Fourth Circuit, Jensen, they argued the case. The decision has not come out. I'm not sure if the appeal – where the appeal in the – I think it's in New York cases. I'm not positive where that is, but I know no decisions have come out other than from the First Circuit. But I want to just quote something that Judge Brett said in Flint v. Bonta, 131 F. 4th at 932. As judge-made enforced doctrine, the strictures of the Dormant Commerce Clause have ebbed and flowed over time through case law. So it's sort of an amorphous thing because it's not dictated by the Constitution. And I think recognizing that the Dormant Commerce Clause does not apply to protect a free-flowing interstate market in a federally illegal product for which Congress has said for the nation's benefit there should be no interstate market, that's an appropriate ebb to the tide of the Dormant Commerce Clause. And if there are any questions, I'll submit. Thank you, Counsel. Now, rebuttal. Thank you, Your Honor. The government opened and also closed by saying there's no limiting principle if the Dormant Commerce Clause applies. They can make the argument that they've made in the briefs that by keeping it in state that they're avoiding federal prosecution. There is a baitfish case where the government said, yeah, generally, per se, if you try to prohibit out-of-state, but they upheld the exclusion of baitfish because baitfish can introduce foreign diseases into the local water. So I agree it's somewhat of an unusual case that we're talking about in illegal products. So if the state government believes that their prohibition avoids federal enforcement, they can argue that is a purpose that would survive strict scrutiny. Is your limiting principle that you can distinguish between licenses and marijuana? Well, I think the Dormant Commerce Clause as a doctrine applies to all of this, but the limiting principle on the test is that these are two very different tests. The test of allowing out-of-state investment in the ownership, I don't think there's any principled reason for prohibiting that. If they believe they have a reason for not allowing the intrastate transfer of... It's a wholly intrastate market. But what's the limiting principle that you can't limit ownership and licensings, but you can limit the product? I'm saying they're two different... So the Dormant Commerce Clause test is you have to say, this is my local purpose, and this is why I can't be served by another means. The local purpose for prohibiting out-of-state ownership, if their argument is it keeps the federal government prosecuted, that's not true. California doesn't require it. New York doesn't require it. Oregon doesn't require it. There are no prosecutions. If they believe that they need a limiting principle of transferring the product because that avoids federal enforcement, they can raise that. That's not raised in this case. We aren't arguing that the product should transfer between state lines. This case is solely about out-of-state ownership and licenses. So they can make... It's two completely different tests, right? You say, what is your local purpose, and then what are your bases? They also pointed out that the Dormant Commerce Clause would override state action. That if the state says only within the state, but you say, well, the Dormant Commerce Clause overrides that, that that would be inconsistent. That happens all the time. That happens in every Dormant Commerce Clause case. Dean Milk is one that's cited in the briefs, where it was a similar thing. They relied on the state health and safety. They said, we have to make sure milk is processed to the standards of, I think it was Madison, it was county, and the Supreme Court rejected that. So it happens all the time. That's the whole point of the Dormant Commerce Clause, is it overrides state action that's unconstitutional. The state has phrased it as a step zero that says the question of whether Congress has made an unmistakably clear message only applies if the Dormant Commerce Clause applies. That's circular. That is the test. The Dormant Commerce Clause applies unless the federal government has made an unmistakably clear message to the contrary. That's the test. So for them to say that that test only applies if the Dormant Commerce Clause applies, well that is the test to determine whether the Dormant Commerce Clause applies. The state also mentioned Pick a State, the lottery case, and they said, I don't have the exact words, but if there's no right to engage in an interstate article of commerce that is unconstitutional. In Pick a State, it was the interstate commerce that was unconstitutional. It was not lottery tickets that were unconstitutional. Here, cannabis is illegal. They're not distinguishing between in-state and out-of-state. The distinction between in-state and out-of-state comes from the Quill Memo, which as the court has pointed out is irrelevant. Pick a State said you can buy all the in-state lottery tickets you want under federal law. They only criminalize the interstate commerce in lottery tickets. So the state law that said you can have state lottery tickets but not out-of-state, that was entirely consistent. I gather you must know a fair amount about cannabis regulation given your practice. How many types of protectionist laws are there at the state and local level? We're talking about a licensing law. Presumably there are laws against transfer of marijuana across state lines. What else is out there? I understand that, but I'm trying to understand if your position is that the Dormant Commerce Clause applies. So we would then go and evaluate lots of different types of state laws under those, and I understand your position that some of those might survive and some of them might fail, and that would be a question for later. But I guess I'm wondering, what's the universe of types of protectionist restrictions that are out there? So some states allow only in-state ownership of license. Some states don't. All states prohibit the cross-border of the product, and some states have more restrictive advertising requirements. Although off the top of my head, I don't see a Dormant Commerce Clause issue with advertising, but some people brought it up. There are other things that are not Dormant Commerce Clause issues that governments have tried to bring up, like state labeling. None of this affects state labeling, and we see that with all sorts of consumer products. States can require whatever labeling they want, and sellers of whatever the product is just have to comply with state labeling. That happens all the time all across the country. So yeah, off the top of my head, it really comes down to whether out-of-state persons can own licenses and whether the products will cross state lines. Okay, thanks. I guess to be complete, there's also maybe a subset of the ownership one, where some have said you can have no more than three retail licenses in other states, because they're trying to avoid what they call big cannabis. So they'll say that, but that's really just sort of a subset of the out-of-state ownership. All right, thank you, counsel. Thank you. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BRESS, BUMATAY